## M.S.R. IMPORTS, INC.

v.

## R.E. GREENSPAN CO., INC.

### Civ. A. No. 81–3223.

United States District Court,
E.D. Pennsylvania.

Aug. 9, 1983.

Stanley H. Cohen, Caesar, Rivise, Bernstein & Cohen, Ltd., Philadelphia, Pa., for plaintiff.

Roberta L. Jacobs, Seidel, Gonda, Goldhammer & Panitch, P.C., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

Following a nonjury trial, I determined that plaintiff's copyrights on two items of metal sculpture were infringed by defendant R.E. Greenspan Co., Inc. (Greenspan company). In addition to an award of stat-

utory damages and injunctive relief, I determined that plaintiff was entitled to recover from defendant its full costs for the action, along with reasonable attorney's fees under 17 U.S.C. § 505. *M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc.,* No. 81–3223 (E.D.Pa. April 27, 1983). Plaintiff M.S.R. Imports, Inc. (MSR), has now filed its petition for attorney's fees and the issues surrounding the amount of such fees to be awarded have been fully briefed by the parties.

In this circuit the *"Lindy"* analysis provides the appropriate framework within which attorney's fees are normally awarded. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*).

*Lindy I* requires an initial determination of the number of hours spent by an attorney, and in what manner, multiplied by a reasonable hourly rate set by the court, based upon the attorney's reputation, status and normal billing rate. The burden of establishing these components is on the party seeking the fee. The resulting figure or "lodestar" can then be adjusted either upward or downward based upon the court's determination of the contingency of success and the unusual quality of the legal skills employed.

In *Lindy II,* the court enumerated specific factors to structure the court's inquiry into the contingency and quality factors. Later decisions in this circuit have provided further instruction as to the application of the guidelines in *Lindy I* and *II. See Walker v. Robbins Hose Co. No. 1, Inc.,* 622 F.2d 692 (3d Cir.1980); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir.1978); *Hughes v. Repko,* 578 F.2d 483 (3d Cir.1978); *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir.1978) (*Prandi-*

ni II*); *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir.1977) (*Prandini I*).

The United States Supreme Court recently issued an opinion concerning attorney's fees, *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and the impact of the *Hensley* decision on the *Lindy* cases must be considered by me in awarding attorney's fees in this action.

The Supreme Court in *Hensley* emphasized a factor justifying adjustment of the lodestar, *i.e.,* the relationship between the extent of success and the amount of the fee award. —— U.S. at ——, 103 S.Ct. at 1941. I agree with the opinion of Judge Huyett of this district that *Hensley* casts doubt on the prior opinion of the Third Circuit in *Hughes, supra* at 486–87, which held that a plaintiff could only recover for hours which contributed to essentially successful claims. *See Institutionalized Juveniles v. Secretary of Public Welfare,* 87 F.R.D. 463 (E.D.Pa.1983). The *Hensley* Court, by contrast, approved compensation for hours spent on unsuccessful claims which are related to successful claims by a common core of facts or legal theories. The district court should consider the result obtained in determining the amount of compensation for such hours. —— U.S. at ——, 103 S.Ct. at 1939.

*Number of Hours*

■ Defendant argues that the plaintiff should not be allowed compensation for the hours spent in discovery pursuing claims for actual damages incurred by plaintiff because the plaintiff later decided to pursue a claim for statutory damages only. Defendant contends that the plaintiff should have known prior to discovery that it could not produce evidence of actual damages. I disagree. Plaintiff apparently proceeded with discovery in an attempt to establish actual damages. When this proved to be unworkable, plaintiff chose, as was its right, to pursue statutory damages as an alternative. There is no indication that discovery was undertaken in bad faith or in a frivolous fashion. The discovery on actual damages was related to the successful claim for statutory damages by a com-

mon core of facts and legal theories and I conclude that full recovery for these hours spent in discovery is appropriate under *Hensley* since, although plaintiff elected the remedy of statutory rather than actual damages, MSR was fully successful on all its claims against defendant. *Hensley, supra* at ——, 103 S.Ct. at 1939.

■ Defendant Greenspan company also makes a number of arguments having as their bases the contention that Mr. Cohen, whose hourly billable rate is high, performed a number of duties which could or should have been performed by paraprofessionals, law clerks, or associates at a much lower hourly rate. The first of these involves a small amount of time spent by Mr. Cohen assembling documents for trial (.5 hour) and "getting files in order" (some portion of one hour spent on other duties as well). In view of the very small amount of time involved, it is likely that, had Mr. Cohen turned responsibility for these duties over to another, he would have spent almost the same amount of time giving instructions on how the job was to be done. Also, as any competent trial lawyer knows, "do-it-yourself" preparation by the trial attorney is the best way to be sure things are properly assembled for efficient trial presentation. It is the trial attorney who has the ultimate trial responsibility. No rule of court should force a trial attorney to assign the duties of assembling documents and files for trial to an underling upon pain of not being paid for the work.

■ Greenspan company also objects to Mr. Cohen doing his own legal research, arguing that research should be performed by paraprofessionals or junior attorneys billable at a rate not higher than twenty-five dollars per hour. Defendant cites in support the case of *Swicker v. William Armstrong & Sons, Inc.*, 484 F.Supp. 762, 773 (E.D.Pa.1980). In that case, I set a rate of compensation for research done by paraprofessionals and research assistants. I most assuredly did not, however, reach the remarkable conclusion that it is inappropriate for senior attorneys to be compensated when they do their own research.

Presumably, senior attorneys can perform research more efficiently than less experienced individuals. Moreover, it is often necessary for a senior attorney to do his or her own research to gain a full and proper understanding of complex or technical issues such as those underlying the instant action. I see no reason to disallow compensation for those hours spent by Mr. Cohen performing legal research. Good legal research, particularly personal research by a trial attorney, is the lifeblood of the law.

Plaintiff submits the following as hours reasonably spent in support of its claim:

| | | |
|---|---|---|
| Stanley H. Cohen | 174.3 hours + | 1 day court time |
| Barry A. Stein | 2.5 hours + | 1 day court time |
| Dennis R. Bartholomew | 29.0 hours | |

■ The plaintiff has also submitted copies of the "time slips" kept by the attorneys named above in the course of their recordkeeping which document the work performed during each hour claimed. I have carefully reviewed these time slips, the affidavit of counsel and the briefs, and I conclude that all of the aforementioned hours were "reasonably supportive" of the plaintiff's claims and, except for the one day of court time spent by Mr. Stein, reasonably necessary. While I do not doubt that the presence of Mr. Stein in court provided support and assistance to Mr. Cohen who presented plaintiff's case at trial, it cannot be said that Mr. Stein's presence was reasonably necessary. The trial was a short one and, because of very careful and skillful pretrial preparation by both sides, evidence and testimony was presented in a straightforward, uncomplicated fashion. It was not "necessary" for presentation of plaintiff's case that two experienced senior attorneys be present at trial. I will therefore not permit compensation for the one day of trial time by Mr. Stein.

In summary I will allow compensation for all hours claimed for Mr. Cohen and Mr. Bartholomew, including the one day of court time for Mr. Cohen. I will deny compensation for the one day of court time by Mr. Stein, but permit recovery for the

2.5 hours spent by him on research concerning law on the joint ownership of copyrights. Plaintiff may recover the following hours: for Mr. Cohen, 174.3 hours plus one day of court time; for Mr. Bartholomew, 29 hours; and for Mr. Stein, 2.5 hours.

*Amount per Hour*

Plaintiff claims the following as rates charged to plaintiff and other clients by Mr. Cohen and Mr. Stein:

> for 1981 – $ 140.00 per hour
> for 1982 – $ 150.00 per hour for "non-court" work
> $ 175.00 per hour for time spent in court
> for 1983 – $ 160.00 per hour for "non-court" work
> $1500.00 per day for appearances in court.[1]

Plaintiff claims that the work of Dennis Bartholomew, a law student employed by Mr. Cohen's law firm, should be compensated at the rate of $25 per hour.

■ These rates, it is averred, are those charged to all clients of counsel during the relevant time periods. An attorney's normal hourly billing rate is a logical starting place for valuing an attorney's services— taking account of the attorney's legal reputation and status (partner, associate). *Baughman, supra* at 1217; *Lindy I, supra.*

■ Of course, the hourly rate in each case must be considered in accordance with the individual circumstances of the litigation. *Baughman, supra* at 1217. Mr. Cohen has been a partner in his current law firm for almost twenty years, a firm which specializes in patent and copyright law. He has conducted over eighty civil actions involving charges of copyright infringement. He has lectured on the Copyright Act under which the instant case was litigated and has developed substantial expertise in the area of copyright law. Cohen affidavit, Plaintiff's Petition for Assessment of Counsel Fees. I conclude that based on Mr. Cohen's years of practice and expertise, the quality of written submissions and work at trial, and rates charged by similarly-situated attorneys in Philadelphia, the rates claimed by him are reasonable.

■ While employed by plaintiff's counsel, Dennis Bartholomew was a third year student at the Villanova University School of Law, was ranked fourth in a class of approximately two hundred students and was a member of the Villanova Law Review. I conclude that based on these credentials, the rate of twenty-five dollars per hour is reasonable.

■ As for Mr. Stein, the record is devoid of any facts upon which to evaluate his professional credentials. The affidavit of Mr. Cohen provides only that Mr. Stein is a partner in the same law firm. I have previously concluded that Mr. Stein may be compensated for 2.5 hours only. In view of the absence of anything upon which to value his time, I will allow compensation at the rate of seventy dollars per hour, which I believe to be a figure representing the low end of the spectrum of compensation for partners at firms such as his.

*Lodestar*

Having computed the number of hours and the reasonable hourly rates, the lodestar can be calculated as follows:

| | Hours | | Rate | | |
|---|---|---|---|---|---|
| Stanley A. Cohen | 39.4 | x | $ 140 | = | $ 5,516.00 |
| | 55.9 | x | 150 | = | 8,385.00 |
| | 1.5 | x | 175 | = | 262.50 |
| | 77.5 | x | 160 | = | 12,400.00 |
| Plus 1 day court time | | | | | 1,500.00 |
| | | | | | $28,063.50 |

1. At the time of submission of the fee petition, plaintiff had actually paid to counsel all the fees sought in this petition except for a bill for $1,600 sent to plaintiff on the filing date. Cohen affidavit, Plaintiff's Petition for Assessment of Counsel Fees.

| | Hours | | Rate | | | |
|---|---|---|---|---|---|---|
| Barry Stein | 2.5 | x | $ 70 | = | $ | 175.00 |
| Donald Bartholomew | 29.0 | x | $ 25 | = | $ | 725.00 |
| TOTAL LODESTAR = | | | | | | $28,963.50 |

Although *Lindy I* and *II* and their progeny refer frequently to an hourly billing rate for calculating the "lodestar," I know of no logical reason that a daily rate for a full trial day would be an improper basis for establishing a fair and reasonable fee. Such a sum might well exceed an hourly rate ordinarily charged. That some trial days might be several hours longer than other trial days should make no difference, since a full day in court essentially utilizes an attorney's full working day. Most lawyers would agree, I believe, that a day in court in actual trial requires the most intense concentration and effort and imposes the heaviest stress upon a lawyer of any of a lawyer's professional services to clients. A daily in-court billing rate for trial work appears to be in accord with the requirements of the *Lindy* cases concerning the establishing of a rate of compensation, as well as the requirement of specificity as to the type of service rendered.

*Adjustments to the Lodestar*

The plaintiff has not requested any upward adjustment to the lodestar in this action and I agree that none should be made, in view of the substantial hourly charges.

Defendant makes some general arguments directed at reduction of the lodestar. Greenspan company argues that the amount of statutory damages awarded in this action, $20,000.00, should provide the maximum amount recoverable as attorney's fees. Defendant, in support of this assertion, points to a number of copyright infringement cases in which attorney's fees awarded were less than the amount of the damage award. A review of these cases indicates that each award was made on the basis of an analysis of the individual fac-

tors present in each action. There is no express or implied correlation between the amount of the damage award and the attorney's fees allowed. Such a correlation would, in any event, run counter to the principles of the *Lindy* cases and their progeny, which provide for adjustment of the lodestar based on the contingent nature of success, the quality of counsel's work and the substantive purposes of the act under which fees are awarded. *See Lindy I* and *II, supra; Hughes, supra.* I see nothing under any of these factors to warrant a reduction of the lodestar and will make no such adjustment. I again note that under *Hensley, supra,* no downward adjustment is warranted since plaintiff was successful on all its claims. An order follows.

ORDER

Upon consideration of plaintiff's petition for attorney's fees, along with supporting and opposing memoranda of law, it is hereby ordered, for the reasons set forth in the accompanying memorandum of law, that attorney's fees are awarded pursuant 17 U.S.C. § 505 in the total amount of Twenty-Eight Thousand Nine Hundred Sixty-Three Dollars and Fifty Cents ($28,963.50).